IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY : | |
| : | CIVIL ACTION |
| v.  : | |
| : | NO. 13-0038 |
| FRANKLIN MILLS ASSOCIATES : | |
| LIMITED PARTNERSHIP : | |

**SURRICK, J.**                                                                                    **SEPTEMBER 23 , 2014**

**MEMORANDUM**

Presently before the Court is Defendant's Motion for Judgment on the Pleadings (ECF No. 9). For the following reasons, Defendant's Motion will be denied.

**I.    BACKGROUND**

This action is a dispute over a putative settlement agreement between Plaintiff Nationwide Insurance Company ("Nationwide") and Defendant Franklin Mills Associates Limited Partnership ("Franklin Mills"). For purposes of this Rule 12(c) motion, we accept the Complaint's allegations as true and view the facts in the light most favorable to Nationwide as the nonmoving party. *DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 215 (3d Cir. 2007).

**A.    The Assessment Litigation**

This is the latest in a series of actions between Franklin Mills and Nationwide regarding a property located at 1933 Franklin Mills Circle, a/k/a 4301 Byberry Road, Unit M3, Philadelphia, Pennsylvania (the "Property"), which is part of a parcel of land that was developed as the Franklin Mills Mall. (Compl. ¶ 7, ECF No. 1.) It is the second time these parties have been before this Court. In the previous action (the "Assessment Litigation"), Franklin Mills filed a

complaint alleging that Nationwide, as owner of the Property, owed Franklin Mills certain promotional and maintenance assessment payments relating to the Property.  *See* Compl., *Franklin Mills Assocs., L.P. v. Nationwide Life Ins. Co.*, No. 09-3045 (E.D. Pa. July 8, 2009), ECF No. 1.  The parties filed cross-motions for summary judgment at the close of discovery.  We concluded after a thorough review of the evidence and the parties' arguments that "the covenant to pay Annual Assessments runs with the land and is binding on subsequent property owners.  Accordingly, summary judgment in favor of Plaintiff on its breach of contract claim is appropriate with respect to Defendant's liability to pay Annual Assessments."  *Franklin Mills Assocs., L.P. v. Nationwide Life Ins. Co.*, 836 F. Supp. 2d 238, 250 (E.D. Pa. 2011).  Since the parties had not engaged in sufficient discovery to determine the proper amount of damages at that point, we denied summary judgment with respect to damages pending further discovery and a trial, if necessary.  *Id.* at 250-51.

      B.      **The Settlement Agreement**

Following our decision on the cross-motions for summary judgment, the parties engaged in a settlement conference before then-Magistrate Judge (and current District Judge) Felipe Restrepo.  Jay Kagan, Esq., represented Franklin Mills at the conference, while Paul Scheuritzel, Esq., represented Nationwide.  Each party also had a corporate representative present for the negotiations.  At the settlement conference, which took place on May 31, 2012, Nationwide and Franklin Mills reached an agreement (the "Settlement Agreement") to settle the Assessment Action, the essence of which they read into the record before Judge Restrepo:

> Mr. Kagan:  We have resolved the litigation for a total sum of $1,450,000.  Of that amount, $636,000 is to be paid to my client on or before June 10th, 2012.  The remaining $814,000 will be paid at the closing of a real estate transaction which I'm going to discuss.

> As a secondary part of the resolution of this case, Franklin Mills has agreed to take—take ownership of this particular parcel of land from Nationwide subject to a couple of conditions. The first: Franklin Mills will be afforded an opportunity to expect [sic] the premises and Mr. Scheuritzel and I will workout [sic] some language setting forth the criteria for that inspection and any limitations relating thereto.
>
> Nationwide has also indicated that it will provide insurable title to Franklin Mills. We have advised Nationwide that this entire transaction has to be approved by David Simon, the CEO of Simon Property Group and, also, has to be approved by Franklin Mills and Simon Property Group's lenders.
>
> Mr. Scheuritzel: And, just, it's my understanding that these points will be reduced to a—a settlement agreement with mutual releases according to customary terms before June 10th.
>
> Mr. Kagan: Yes.
>
> Mr. Scheuritzel: And—and that we would like a confidentiality provision as well. I imagine you would, too.
>
> Mr. Kagan: Yes.

(May 31, 2012 Hr'g Tr. 3:25-5:1, Compl. Ex. A.) In addition, Nationwide alleges that during negotiations with Judge Restrepo, the parties agreed that Franklin Mills' right to reject the Property would be limited to a situation in which the inspection revealed the building to be structurally unsound. (Compl. ¶ 14.) Nationwide disclosed that there were issues regarding water infiltration with the Property, and that it would not accept this as a reason for Franklin Mills to reject the Property. (*Id.*) Understanding that the matter was settled, we entered an order dismissing the Assessment Action pursuant to Fed. R. Civ. P. 41.1(b) on May 31, 2012.

The parties focused on the June 10 date to put the Settlement Agreement in writing because the trial on damages was scheduled to begin on June 11, 2012. (Compl. ¶¶ 8, 15.) In the weeks following the settlement conference, Nationwide and Franklin Mills engaged in a series of communications in an attempt to fulfill the terms of the Settlement Agreement. Excerpts from the email chain between Messrs. Scheuritzel and Kagan read as follows:

3

June 5, 2012: *Mr. Kagan (Franklin Mills) to Mr. Scheuritzel (Nationwide)*

> Please forward the [$636,000] check to me on or before June 10 (which I just realized is a Sunday—so preferably by Friday 6/8). Thank you. Jay

June 5, 2012: *Mr. Scheuritzel to Mr. Kagan*

> Thanks. Have Mr. Simon and the lenders approved the settlement?

June 7, 2012: *Mr. Kagan to Mr. Scheuritzel*

> Paul—we need a current Phase 1. Thereafter, the documentation needed to close will include an acceptable property condition report, title report, survey, zoning compliance, no legal violations rep and closing adjustments for real estate taxes.
>
> Please be reminded that the check for $636,000 should be delivered to my office tomorrow.

June 7, 2012: *Mr. Scheuritzel to Mr. Kagan*

> Please take a look at the attached agreement, which I believe embodies our discussions. In it, I have tried to address your concerns expressed below.

(Compl. Ex. C.)

The attachment to this email is a draft of the written Settlement Agreement created by counsel for Nationwide. It contains the following provision:

> **2.      Transfer of the property.** Subject only to a physical inspection of the Property by a reputable and independent third-party inspector reasonably acceptable to Nationwide engaged by Franklin Mills, which inspection shall be completed within thirty (30) days after execution of this Confidential Settlement Agreement and Release and documented in a written report, Nationwide shall transfer and Franklin Mills will accept by quit claim deed insurable title . . . to the Property. Such transfer shall occur within forty-five (45) days after execution of this Confidential Settlement Agreement and Release. Simultaneous with the transfer of title to the Property from Nationwide to Franklin Mills, Nationwide shall make an additional payment to Franklin Mills in the amount of Eight Hundred Fourteen Thousand Dollars ($814,000.00), to be paid to Franklin Mills Associates Limited Partnership by check. . . .
>
> The purpose of Franklin Mills' physical inspection of the Property is to determine whether the structural elements (those that are load bearing) of the existing improvements at the Property are sound. Franklin Mills agrees to accept transfer

>of the Property unless structural repairs are required and necessary to render such improvements suitable for occupation and such repairs will cost more than $1,000,000 to implement. . . .
>
>Except as otherwise provided herein, Franklin Mills shall accept the Property "as is."

(*Id.*)

On June 8, Mr. Kagan emailed Mr. Scheuritzel asking him to "confirm the $636k is en route to me." (Ans. Ex. B, ECF No. 7.) Mr. Scheuritzel replied, "I have the check in my possession." (*Id.*) The next day Mr. Kagan sent an email stating that he would send someone to pick the check up on Monday, June 11. (*Id.*) The morning of June 11, Mr. Scheuritzel asked Mr. Kagan via email, "Are you sending over a signed settlement agreement?" (*Id.*) Mr. Kagan replied: "Regarding a settlement agreement, the contemplated transaction transferring the property from Nationwide to Franklin Mills should not be included in a settlement document resolving the lawsuit. That is a separate item. If you want a Settlement Agreement for the lawsuit, then the key terms are as follows." (*Id.*) The email then lists six terms:

1. Nationwide's payment of $636,000 would bring its assessments account current through May 31, 2012.

2. The Assessment Action would be dismissed.

3. Assessments would again begin to accrue on June 1, 2012.

4. Assessments would be recalculated as of January 1, 2013, to reflect actual 2012 expenses.

5. Nationwide re-acknowledges the validity of the covenants and its obligation to pay the assessments.

6. If the Property transfer occurred as contemplated, Nationwide would owe no further assessments.

(*Id.*)

That same morning, Mr. Scheuritzel sent a letter to Mr. Kagan with an enclosed check for $636,000. It is unclear whether he had received Mr. Kagan's email listing the terms of a settlement when he sent the check. The letter accompanying the check reads in pertinent part:

> In accordance with the parties' agreement, which we placed on the record before the court on May 31, 2012, I have enclosed with this correspondence a check in the amount of $636,000 from Nationwide payable to Franklin Mills Associates Limited Partnership. This amount represents an accord and satisfaction regarding all outstanding amounts claimed by Franklin Mills in the above-referenced litigation and the agreed settlement proceeds to settle the litigation in its entirety, including assessments, interest and costs of collection including attorney's fees and costs. If you disagree with the foregoing, please return the check to me.
>
> The settlement terms placed on the record on May 31, 2012 required that Franklin Mills and Nationwide enter into a written settlement agreement, which so far has not occurred. I have also enclosed a copy of the draft settlement agreement that I delivered to you last week. I therefore ask that you hold these proceeds in escrow until the parties have fully executed an agreed-upon settlement agreement consistent with the terms we set forth on the record.
>
> If I have misapprehended anything please let me know.

(Compl. Ex. D.) Despite the request to place the proceeds in escrow until the parties reduced the Settlement Agreement to writing, Franklin Mills deposited the check. (Compl. ¶ 25.)

### C.    The Property Inspection

On June 25, 2012, Franklin Mills arranged for an inspection and Phase I Environmental Assessment of the Property by AEI Consultants. (*Id.* ¶ 27.) AEI conducted the inspection on July 2 and prepared a written report, which it transmitted to Franklin Mills on July 17. (*Id.* ¶¶ 28-29.) Franklin Mills did not immediately share the report with Nationwide. (*Id.* ¶ 30.) On July 24, Mr. Kagan emailed a copy of the report to Mr. Scheuritzel. The email stated that "there are major problems (significantly, but not limited to, the presence of mold) that need to be remedied. Given the results of the inspection and the Phase I Environmental, my client is not presently prepared to proceed with the contemplated property transaction." (*Id.* ¶ 31 & Ex. E.)

Nationwide filed this action against Franklin Mills on January 3, 2013, alleging that it had breached the Settlement Agreement by refusing to complete the Property transfer. (*Id*. ¶¶ 36-42.) Nationwide also brings a claim for equitable estoppel. (*Id.* ¶¶ 52-60.) Franklin Mills filed the instant Motion for judgment on the pleadings on April 4, 2013. (Mot. J. Pleadings, ECF No. 9.)

## II.     LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The court evaluates a Rule 12(c) motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *See Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Sprague v. Neil*, No. 05-1605, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.38 (3d ed. 2004)). Under this standard, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *DeBenedictis*, 492 F.3d at 215 (internal citations omitted). To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citation omitted). Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual

7

allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986) (cited with approval in *Twombly*, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See, e.g.*, *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## III.   DISCUSSION

Nationwide asserts claims for breach of contract (Count One) and equitable estoppel (Count Three).[1] Franklin Mills alleges counterclaims for breach of contract (Counts One and Two). Franklin Mills argues that it is entitled to judgment on the pleadings on both counts in the Complaint as well as on its counterclaims. We conclude that there are questions of fact that render judgment on the pleadings inappropriate here.

### A.   Nationwide's Breach of Contract Claim

Nationwide alleges that Franklin Mills' refusal to accept transfer of the Property is a breach of the Settlement Agreement because the contract permitted Franklin Mills to reject the Property only if an inspection revealed structural damage to the building. (Compl. ¶¶ 36-42.) Franklin Mills responds that this is a *post hoc* attempt by Nationwide to insert a term to which

---

[1] Nationwide also brings a claim for specific performance of the Settlement Agreement (Count Two). Specific performance is an equitable remedy for breach of contract, not an independent cause of action, so we construe Count Two as a request for equitable relief for the breach of contract claim in Count One. *See McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Bus. Trust*, No. 08-961, 2009 WL 1292808, at *3 (W.D. Pa. May 7, 2009) (construing count for specific performance as request for equitable remedy for breach of contract); *accord Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 727 (D. Del. 2011) ("Specific performance is a remedy sought for breach of contract, and not a cause of action in and of itself.").

the parties had never agreed into the Settlement Agreement. Because we will require evidence beyond the pleadings to determine the precise terms of the Settlement Agreement, this is a question of fact that cannot be determined on a Rule 12(c) motion.

To state a claim for breach of contract under Pennsylvania law, Nationwide must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (internal quotation marks omitted, alteration in original)). As a preliminary matter, neither party argues that a contract was never formed or that essential terms are lacking.[2] Rather, the dispute centers on whether the Settlement Agreement contains limitations on Franklin Mills' right to reject the Property and, if so, what those limitations are. (*Compare* Compl. ¶ 32 ("The reasons stated by Franklin Mills for its refusal to accept a conveyance of the Property from Nationwide are not valid under the parties' settlement agreement because . . . issues related to the water infiltration . . . would not constitute grounds to reject the Property."), *with* Mot. J. Pleadings 14-15 (arguing that Franklin Mills never agreed to a provision limiting its right to reject the property to structural issues).)

Although Franklin Mills does not contest whether the agreement reached before Judge Restrepo is a valid contract, it does argue that "there were two clear, yet distinct, agreements that together comprised the Settlement Agreement." (Mot. J. Pleadings 13.) The first was the agreement that Nationwide would pay $636,000 to Franklin Mills to settle the previous action

---

[2] Under Pennsylvania law, "[a]n oral settlement agreement may be enforceable and legally binding without a writing." *Pulcinello v. Consol. Rail Corp.*, 784 A.2d 122, 124 (Pa. Super. Ct. 2001); *see also Good v. Pa. R.R. Co.*, 384 F.2d 989, 990 (3d Cir. 1967) (per curiam) (holding that oral settlement agreement "was valid and binding despite the absence of any writing or formality").

9

between the parties. The second was the agreement "that Franklin Mills *would consider* taking title to the Property subject to an inspection and corporate and lender approvals." (*Id.* (emphasis in original).)

We conclude that neither the Complaint nor the transcript of the proceedings before Judge Restrepo suggests two independent contracts or that Franklin Mills would only *consider* taking title to the Property.[3] Counsel for Franklin Mills stated on the record that "[w]e have resolved the litigation for a total sum of $1,450,00.00. Of that amount, $636,000 is to be paid to my client on or before June 10th, 2012. The remaining $814,000 will be paid at the closing of a real estate transaction which I'm going to discuss." (May 31, 2012 Hr'g Tr. 3:25-4:4.) This suggests a unitary contract—not a $636,000 settlement agreement with an adjunct property-transfer agreement, as Franklin Mills characterizes it. Moreover, the Complaint and hearing transcript indicate that Franklin Mills had agreed to "take ownership of this particular parcel of land from Nationwide subject to a couple of conditions" (*id.* at 4:6-8), as its counsel stated on the record, and not merely to consider taking ownership. Given the deferential standard with which we must view the Complaint's allegations, we cannot agree with Franklin Mills' conception of the Settlement Agreement.

Next, Franklin Mills contends that the limitations on its right to reject the Property were never a part of the Settlement Agreement, arguing that "[t]he Settlement Agreement as recited into the record at the Settlement Conference is clear and unambiguous, and it does not contain the Inspection Limitation Provisions." (Mot. J. Pleadings 15.) Franklin Mills cites no case law for the proposition that a settlement agreement read into the record cannot contain additional

---

[3] Indeed, we question whether a promise simply to consider something would be anything other than illusory. *See, e.g.*, *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 512 (Pa. Super. Ct. 1992) ("If [a] promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable.").

terms that have not been entered into the record.  To the contrary, "[a] contract is formed if the parties agree on essential terms and intend them to be binding even though they intend to adopt a formal document *with additional terms* at a later date."  *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 522 (Pa. Super. Ct. 2009) (citing *Johnston v. Johnston*, 499 A.2d 1074, 1078 (Pa. Super. Ct. 1985)) (emphasis added).

      In essence, Franklin Mills asks us to determine the truth of the Complaint's allegation that Franklin Mills "agreed that issues relating to water infiltration would not constitute a basis for Franklin Mills to reject the Property," which Nationwide contends the parties orally agreed to in front of Judge Restrepo.  (Compl. ¶ 14.)  We are not permitted to make factual determinations in considering a motion for judgment on the pleadings:  the relevant standard requires us to accept the Complaint's allegations as true and draw all reasonable inferences in Nationwide's favor.  *DeBenedictis*, 492 F.3d at 215.  Moreover, the transcript from the settlement conference contemplates that the parties would carve out limitations to Franklin Mills' right to reject the Property.  In outlining the terms of the Settlement Agreement on the record, Franklin Mills' attorney stated that "Franklin Mills will be afforded an opportunity to expect [sic] the premises and Mr. Scheuritzel and I will workout [sic] some language setting forth the criteria for that inspection *and any limitations relating thereto*."  (Hr'g Tr. 4:8-11 (emphasis added).)  Given the reference to limitations on the record, it is reasonable to infer that the parties negotiated certain limitations to Franklin Mills' right to reject the Property.  The existence and nature of those limitations is not something that we can decide at this juncture.

      The Complaint alleges facts that, if proven, would establish that the parties formed an oral contract settling the prior litigation, including a provision limiting Franklin Mills' right to reject the Property transfer to a situation in which the building is structurally unsound.  It further

alleges that after receiving an inspection report showing no structural issues, Franklin Mills refused to complete the transfer. (Compl. ¶¶ 31-34.) We are satisfied that Nationwide has alleged facts that establish a facially plausible claim for breach of the Settlement Agreement by Franklin Mills. Accordingly, the Motion for Judgment on the Pleadings on Count One of the Complaint will be denied.[4]

### B.     Nationwide's Equitable Estoppel Claim

Franklin Mills moves for judgment on the pleadings on Nationwide's equitable estoppel claim. "A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). It "applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken." *Blofsen v. Cutaiar*, 333 A.2d 841, 843 (Pa. 1975). Accordingly, to maintain a claim for equitable estoppel under Pennsylvania law, Nationwide must allege: "1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel." *Chester Extended Care Ctr. v. Dep't of Pub. Welfare*, 856 A.2d 379, 382 (Pa. 1991).

### 1.     Misleading Words, Conduct, or Silence

Franklin Mills argues that Nationwide has failed to allege any misleading actions regarding the parties' failure to enter into a written agreement. (Mot. J. Pleadings 16-17.) We

---

[4] In its Answer, Franklin Mills alleges that the Settlement Agreement is void pursuant to the statute of frauds. (Ans. ¶¶ 4, 63.) Franklin Mills does not raise this issue in its Motion, however, so we do not address it here.

are not persuaded. Although Franklin Mills focuses exclusively on the parties' failure to enter into a written settlement agreement, the Complaint alleges several facts that establish misleading words, conduct, or silence by Franklin Mills regarding the circumstances surrounding the settlement of the Assessment Action.

After receiving a copy of the proposed written settlement agreement that contained the objectionable limitations, Franklin Mills repeatedly asked Nationwide to deliver the $636,000 check that formed a portion of the Settlement Agreement, and Nationwide did so. (Compl. ¶¶ 18-21 & Ex. C.) Nationwide enclosed with the check a letter stating that it was submitting the check "[i]n accordance with the parties' agreement," as well as with another copy of the written Settlement Agreement that again contained the clause Franklin Mills found objectionable. (Compl. Ex. D.) The letter further instructed Franklin Mills to return the check to Nationwide if it disagreed with the limitations set forth in the first paragraph of the letter, or to place the check in escrow otherwise. (*Id.*) Franklin Mills did not comment on Nationwide's proposed limitations to the inspection; its only comment regarding the Property transfer prior to depositing the check was that "the contemplated transaction transferring the property from Nationwide to Franklin Mills should not be included in a settlement document resolving the lawsuit. That is a separate item." (Ans. Ex. E.) The email introduced Franklin Mills' understanding of the Settlement Agreement by stating that "[i]f you want a Settlement Agreement for the lawsuit, then the key terms are as follows." (*Id.*) Franklin Mills' proposed terms are silent as to the Property transfer.

The Complaint alleges that despite agreeing to the inspection limitations before Judge Restrepo and possessing a proposed draft Settlement Agreement containing the inspection limitations that it found objectionable, Franklin Mills induced Nationwide to submit a check to it

13

for $636,000 while remaining silent about the potential disagreement over the inspection limitations. Franklin Mills then deposited the check despite instructions not to do so if there was disagreement between the parties, and despite instructions to place the check in escrow until a written Settlement Agreement was executed. We conclude that this course of conduct constitutes misleading words, conduct, or silence for the purposes of an equitable estoppel claim.

        2.     *Reasonable Reliance*

"[U]nder the law of Pennsylvania, a finding of estoppel must be based upon a demonstration of detrimental reliance by the party asserting the doctrine." *Style v. Shaub*, 955 A.2d 403, 408 (Pa. Super. Ct. 2008) (citing *In re Appeal of the Borough of Akron v. Hollinger*, 633 A.2d 1244, 1247 (Pa. Commw. Ct. 1993)). Franklin Mills argues that although the reasonableness of reliance is usually a fact question, courts have found as a matter of law that sophisticated business entities cannot rely on representations that are contrary to express agreements, and it was therefore not reasonable for Nationwide to expect Franklin Mills to "execute a written agreement that was inconsistent with the Settlement Agreement . . . ." (Mot. J. Pleadings 17.)

Franklin Mills again assumes that its view of the Settlement Agreement's contents is the correct one—namely, that the oral Settlement Agreement did not contain the inspection limitation provisions. As with Nationwide's breach-of-contract count, we are not permitted to assume that the moving party's version of the facts is true on a Rule 12(c) motion. Assuming, as we must, that the Settlement Agreement contained the limitations at issue, there was no inconsistency between the Settlement Agreement and the draft that Nationwide submitted to Franklin Mills. The Complaint establishes that Nationwide reasonably relied on Franklin Mills' representations when it submitted the $636,000 check to Franklin Mills.

### 3.     *Duty to Inquire and Knowledge of the Truth*

Finally, Franklin Mills makes two related but distinct arguments.  First, it argues that "Nationwide had a duty to further inquire to the extent it was uncertain as to the terms of the Settlement Agreement."  (Mot. J. Pleadings 17.)  In support of this argument, Franklin Mills cites *Storms v. O'Malley*, 779 A.2d 548 (Pa. Super. Ct. 2001).

Franklin Mills again misapprehends the nature of our task on a Rule 12(c) motion.  We must accept as true the Complaint's allegation that "Franklin Mills' representative at the settlement conference agreed that issues relating to water infiltration would not constitute a basis for Franklin Mills to reject the Property."  (Compl. ¶ 14.)  Therefore, there was nothing for Nationwide to be uncertain about:  it reasonably believed it had an agreement on those terms.  Under these circumstances, we find no duty to inquire into whether the limitations to Franklin Mills' right to reject the Property were included in the Settlement Agreement.

Moreover, *Storms v. O'Malley* is not to the contrary.  In *Storms*, the Pennsylvania Superior Court rejected the estoppel claim of the plaintiff (who had been the plaintiff in an underlying medical-malpractice action that settled), concluding that she had a duty during settlement discussions to inquire as to whether the defendant insurers intended to assert a statutory offset that would reduce the plaintiff's recovery by $26,165.  779 A.2d at 560-61.  The court reasoned that the plaintiff's attorneys had been aware that the statutory offset might complicate the negotiations, even going so far as to research the issue, but they did not raise it or seek clarification during settlement negotiations.  *Id.*  In this case, the Complaint alleges that the parties did discuss the limitations to Franklin Mills' right to reject the Property during settlement negotiations and resolved them to both parties' satisfaction.  Unlike *Storms*, this is not a case in

which Nationwide perceived a potential problem during settlement negotiations but elected to remain silent rather than raise the issue with its opponent.

Similarly, we reject Franklin Mills' argument that "where both parties know the true state of the facts . . . there can be no estoppel claim." (Mot. J. Pleadings 17-18.) Under the allegations of the Complaint, there was no lack of clarity by Nationwide regarding the true state of the facts, because it reasonably believed that it had entered into a Settlement Agreement that included the inspection limitation provision. (Compl. ¶ 14 & Ex. D.) Accordingly, we conclude that the Complaint states a colorable claim for equitable estoppel against Franklin Mills.

   C.   **Franklin Mills' Counterclaims**

Franklin Mills contends that it is entitled to judgment on the pleadings regarding its counterclaims against Nationwide. (*See* Mot. J. Pleadings 11-12.) The counterclaims allege that Nationwide has breached its obligation to pay assessments (Count One) and its obligation to maintain the Property (Count Two). We conclude that judgment on the pleadings is inappropriate at this point in the litigation.

Nationwide's putative ownership of the Property is the source of its obligations to Franklin Mills. Yet the Complaint and Plaintiff's Answer and Affirmative Defenses to Counterclaim allege that but for Franklin Mills' breach of the Settlement Agreement, Nationwide would not have owned the property during the period for which Franklin Mills claims it is owed assessment fees. Nationwide reiterates this argument in its Response, as well as a change-of-circumstances argument that we need not reach here. (Pl.'s Resp. 24-26.)

The Settlement Agreement is at the heart of this litigation. Only after we have resolved the factual dispute over Franklin Mills' right to reject the Property can we determine the rights and duties of the parties under both the Settlement Agreement and the real covenants. We

therefore conclude that granting Franklin Mills' request for judgment on the pleadings on its counterclaims would be premature at this point in the litigation.

## IV. CONCLUSION

For the foregoing reasons, Franklin Mills' Motion for Judgment on the Pleadings is denied.

An appropriate Order will follow.

                                                   **BY THE COURT:**

                                                   _____
                                                   **R. BARCLAY SURRICK, J.**