IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-0038 |
| FRANKLIN MILLS ASSOCIATES | : | |
| LIMITED PARTNERSHIP | : | |

## MEMORANDUM

**SURRICK, J.**                                                    **MARCH  31 , 2017**

Presently before the Court are Defendant's Motion for Partial Summary Judgment (ECF No. 34) and Plaintiff's Motion for Summary Judgment (ECF No. 35).  For the following reasons, the Motions will be denied**.**

## I.       BACKGROUND

This action is a dispute over the terms of a purported settlement agreement between Plaintiff Nationwide Insurance Company ("Nationwide") and Defendant Franklin Mills Associates Limited Partnership ("Franklin Mills").

### A.       The Assessment Litigation

This is the second time that these parties have been before this Court to settle a dispute over a property located at 1933 Franklin Mills Circle, a/k/a 4301 Byberry Road, Unit M3, Philadelphia, Pennsylvania (the "Property").  The Property is part of a parcel of land that was developed as the Franklin Mills Mall.  (Compl. ¶ 7, ECF No. 1.)  In the first action (the "Assessment Litigation"), Franklin Mills filed a complaint alleging that Nationwide owed it promotional and maintenance assessment payments (the "Assessments") related to the Property.  (*See* Compl., *Franklin Mills Assocs., L.P. v. Nationwide Life Ins. Co.*, No. 09-3045 (E.D. Pa. July 8, 2009), ECF No. 1.)  The parties filed cross-motions for summary judgment at the close of

discovery.  We determined that "the covenant to pay Annual Assessments runs with the land and is binding on subsequent property owners.  Accordingly, summary judgment in favor of Plaintiff on its breach of contract claim is appropriate with respect to Defendant's liability to pay Annual Assessments."  *Franklin Mills Assocs., L.P. v. Nationwide Life Ins. Co.*, 836 F. Supp. 2d 238, 250 (E.D. Pa. 2011).  Summary judgment with respect to damages was denied pending further discovery and a trial, if necessary.  *Id.* at 250-51.

> **B.**     **The Settlement Agreement**

Following our summary judgment decision, the parties engaged in a settlement conference (the "Settlement Conference") before then-Magistrate Judge L. Felipe Restrepo.  Jay Kagan, Esq., represented Franklin Mills at the conference, while Paul Scheuritzel, Esq., represented Nationwide.  Each party also had a corporate representative present for the negotiations, namely James Owen, Esq. for Franklin Mills and Dana Anthony, Esq. for Nationwide.  At the Settlement Conference, which took place on May 31, 2012, Nationwide and Franklin Mills reached an agreement (the "Settlement Agreement") to settle the Assessment Action, the essence of which was read into the record before Judge Restrepo as follows:

> Mr. Kagan:  We have resolved the litigation for a total sum of $1,450,000.  Of that amount, $636,000 is to be paid to my client on or before June 10th, 2012.  The remaining $814,000 will be paid at the closing of a real estate transaction which I'm going to discuss.
>
> As a secondary part of the resolution of this case, Franklin Mills has agreed to take—take ownership of this particular parcel of land from Nationwide subject to a couple of conditions.  The first:  Franklin Mills will be afforded an opportunity to expect [sic] the premises and Mr. Scheuritzel and I will workout [sic] some language setting forth the criteria for that inspection and any limitations relating thereto.
>
> Nationwide has also indicated that it will provide insurable title to Franklin Mills.  We have advised Nationwide that this entire transaction has to be approved by David Simon, the CEO of Simon Property Group and, also, has to be approved by Franklin Mills and Simon Property Group's lenders.

2

> Mr. Scheuritzel:  And, just, it's my understanding that these points will be reduced to a—a settlement agreement with mutual releases according to customary terms before June 10th.
>
> Mr. Kagan:  Yes.
>
> Mr. Scheuritzel:  And—and that we would like a confidentiality provision as well. I imagine you would, too.
>
> Mr. Kagan:  Yes.

(May 31, 2012 Hr'g Tr. 3:25-5:1, Compl. Ex. A.)  Nationwide alleges that during negotiations with Judge Restrepo, the parties agreed that Franklin Mills' right to reject the Property would be limited to a situation in which the inspection revealed the building to be structurally unsound (the "Structural Inspection Limitation").  (Compl. ¶ 14.)  Nationwide also alleges that it disclosed that there were issues regarding water infiltration with the Property, and that it would not accept this as a reason for Franklin Mills to reject the Property.  (*Id.*)  On May 31, 2012, understanding that the matter had been settled, we entered an order dismissing the Assessment Action pursuant to Fed. R. Civ. P. 41.1(b).

The parties focused on the June 10 date to put the Settlement Agreement in writing because the trial on damages was scheduled to begin on June 11, 2012.  (Compl. ¶¶ 8, 15.)  In the weeks following the Settlement Conference, Nationwide and Franklin Mills engaged in a series of communications in an attempt to fulfill the terms of the Settlement Agreement.  Excerpts from the email chain between Messrs. Scheuritzel and Kagan read as follows:

> June 5, 2012 (1:35 PM):   *Mr. Kagan (Franklin Mills) to Mr. Scheuritzel (Nationwide)*
>
> Please forward the [$636,000] check to me on or before June 10 (which I just realized is a Sunday—so preferably by Friday 6/8).  Thank you.  Jay

June 5, 2012 (2:49 PM):  *Mr. Scheuritzel to Mr. Kagan*

> Thanks.  Have Mr. Simon and the lenders approved the settlement?

June 7, 2012 (2:20 PM):  *Mr. Kagan to Mr. Scheuritzel*

> Paul—we need a current Phase 1.  Thereafter, the documentation needed to close will include an acceptable property condition report, title report, survey, zoning compliance, no legal violations rep and closing adjustments for real estate taxes.
>
> Please be reminded that the check for $636,000 should be delivered to my office tomorrow.

June 7, 2012 (6:26 PM):  *Mr. Scheuritzel to Mr. Kagan*

> Please take a look at the attached agreement, which I believe embodies our discussions.  In it, I have tried to address your concerns expressed below. Zoning compliance will be shown by an ALTA survey.  We'll also need an L&I cert to transfer the property, so I think the items you raise are unlikely to cause problems.
>
> My client has yet to review the attached, so I need to reserve their comments.

(Compl. Ex. C.)

The attachment to this email is a draft of the written Settlement Agreement ("June 7 Proposed Written Agreement") created by counsel for Nationwide.  It contains the following provision:

> **2.      Transfer of the property.**  Subject only to a physical inspection of the Property by a reputable and independent third-party inspector reasonably acceptable to Nationwide engaged by Franklin Mills, which inspection shall be completed within thirty (30) days after execution of this Confidential Settlement Agreement and Release and documented in a written report, Nationwide shall transfer and Franklin Mills will accept by quit claim deed insurable title . . . to the Property.  Such transfer shall occur within forty-five (45) days after execution of this Confidential Settlement Agreement and Release.  Simultaneous with the transfer of title to the Property from Nationwide to Franklin Mills, Nationwide shall make an additional payment to Franklin Mills in the amount of Eight Hundred Fourteen Thousand Dollars ($814,000.00), to be paid to Franklin Mills Associates Limited Partnership by check . . . .

The purpose of Franklin Mills' physical inspection of the Property is to determine whether the structural elements (those that are load bearing) of the existing improvements at the Property are sound.  Franklin Mills agrees to accept transfer of the Property unless structural repairs are required and necessary to render such improvements suitable for occupation and such repairs will cost more than $1,000,000 to implement . . . .

Except as otherwise provided herein, Franklin Mills shall accept the Property "as is."

(*Id.*)

In a separate June 7, 2012 email exchange between Kagan and Scheuritzel each sought to

clarify his client's position:

June 7, 2012 (4:14 PM):  *Mr. Kagan to Mr. Scheuritzel*

Thx.  Just to clarify--your email to me earlier asked about Mr. Simon and the lenders approving the "settlement".  Your question was a bit broad. They have already approved the settlement of the lawsuit for $636,000. We advised of that at the mediation last week.  They are now in the process of looking at, evaluating and approving the transaction taking the property into the Simon portfolio.  My last email to you contained a list of items we need to complete that process.  Thx.

June 7, 2012 (4:23 PM):  *Mr. Scheuritzel to Mr. Kagan*

As far as we are concerned there is one settlement transaction that needs to be approved in principle before the $636,000 is paid.  Nationwide will pay the $636,000 subject to a later inspection for structural problems and delivery of insurable title (which would necessarily require the issuance of a new title report).

I will have the check in my possession Saturday morning.

Zoning should not present a problem because nothing has occurred at the property in the last 11 years.  I cannot imagine that there is anything controversial that would be disclosed by a survey.  Bob Blue did the last survey of which I am aware.

(Def.'s Summ. J. Mot., Ex. A 115.)

On June 8, Kagan emailed Scheuritzel asking him to "confirm the $636k is en route to

me."  (Ans. Ex. B, ECF No. 7.)  Scheuritzel replied, "I have the check in my possession."  (*Id.*)

5

The next day, Kagan sent an email stating that he would send someone to pick the check up on Monday, June 11.  (*Id.*)  The following is an excerpt from a subsequent email exchange that occurred between Scheuritzel and Kagan in which they again attempted to clarify the terms under which they were moving forward:

> June 11, 2012 (8:47 AM):  *Mr. Scheuritzel to Mr. Kagan*
>
> Are you sending over a signed settlement agreement?
>
> June 11, 2012 (11:26 AM):  *Mr. Kagan to Mr. Scheuritzel*
>
> Regarding a settlement agreement, the contemplated transaction transferring the property from Nationwide to Franklin Mills should not be included in a settlement document resolving the lawsuit.  That is a separate item.  If you want a Settlement Agreement for the lawsuit, then the key terms are as follows:
>
> 1.  Nationwide has paid the compromised and agreed-to amount of $636,000 which brings its Assessments account current through May 31, 2012, including interest, attorneys fees etc.
>
> 2.  The lawsuit captioned Franklin Mills v. Nationwide pending before Judge Surrick in the EDPA has been dismissed.
>
> 3.  Starting June 1, 2012 and running through December 31, 2012, the Assessments will accrue at the Base amounts as contemplated in the PMI Declaration and Supplemental Agreement.
>
> 4.  Effective January 1, 2013, the Assessments will be recalculated and charged to Nationwide based on the actual 2012 expenses relative to the actual 2008 expenses, as contemplated by the PMI Declaration and Supplemental Agreement.
>
> 5.  Nationwide re-acknowledges the validity of the PMI Declaration and Supplemental Agreement and its ongoing obligation (for itself and its successors in title) to pay Assessments.
>
> 6.  Provided the separate transaction involving the transfer of title in the Property from Nationwide to Franklin Mills along with Nationwide's additional payment of $814,000 to Franklin Mills occurs as contemplated (with the requisite lender and corporate approvals), then Nationwide will owe no further Assessments, as contemplated in numbers 2, 3 and 4 above.

June 11, 2012 (11:51 AM):  *Mr. Scheuritzel to Mr. Kagan*

> Thanks.  There is new material below that I must discuss with Nationwide.
> I am in and out of the office right now, but I will hand deliver the check to
> you this afternoon based upon the settlement we put on the record and
> then we can resolve the other outstanding issues soon.

June 11, 2012 (12:09 PM):  *Mr. Kagan to Mr. Scheuritzel*

> That should be fine as long as I have the check in hand today.  I don't
> really think there is new material there.  More like clarification so that in
> the unlikely event the property transaction cannot occur there is clarity on
> what happens.

(Def.'s Summ. J. Mot., Ex. A 136-37.)

Later that same day, Scheuritzel sent a letter to Kagan with an enclosed check for

$636,000.  (Pl.'s Summ. J. Mot. 9.)  The letter accompanying the check reads in pertinent part:

> In accordance with the parties' agreement, which we placed on the record before
> the court on May 31, 2012, I have enclosed with this correspondence a check in
> the amount of $636,000 from Nationwide payable to Franklin Mills Associates
> Limited Partnership.  This amount represents an accord and satisfaction regarding
> all outstanding amounts claimed by Franklin Mills in the above-referenced
> litigation and the agreed settlement proceeds to settle the litigation in its entirety,
> including assessments, interest and costs of collection including attorney's fees
> and costs.  If you disagree with the foregoing, please return the check to me.
>
> The settlement terms placed on the record on May 31, 2012 required that Franklin
> Mills and Nationwide enter into a written settlement agreement, which so far has
> not occurred.  I have also enclosed a copy of the draft settlement agreement that I
> delivered to you last week.  I therefore ask that you hold these proceeds in escrow
> until the parties have fully executed an agreed-upon settlement agreement
> consistent with the terms we set forth on the record.
>
> If I have misapprehended anything please let me know.

(Compl. Ex. D.)  Despite the request to place the proceeds in escrow until the parties reduced the

Settlement Agreement to writing, Franklin Mills deposited the check.  (Compl. ¶ 25.)

The June 11 letter also had attached a different proposed written agreement ("June 11

Proposed Written Agreement").  The new written agreement eliminated a proposed process by

7

which Nationwide could also have its own inspection conducted, as well as a proposal for the parties to negotiate new terms if Franklin Mills failed to take title to the property under a structural defect exception.  (Def.'s Br. Supp. Summ. J. Mot. ¶ 44 n.1.)  Nationwide also removed a clause containing Nationwide's representations regarding its provision of a Phase I Environmental report ("Phase I") and lack of knowledge of conditions at the Property constituting legal violations.  (*Id.*)

###        C.       The Property Inspection

On June 25, 2012, Franklin Mills arranged for an inspection and Phase I Environmental Assessment of the Property by AEI Consultants.  (Compl. ¶ 27.)  AEI conducted the inspection on July 2, and prepared a written report, which it transmitted to Franklin Mills on July 17.  (*Id.* ¶¶ 28-29.)  The Phase I section of the report revealed "obvious visual signs of mold growth or conditions conducive for mold growth" and concluded that "[b]ased upon the amount of fungal growth observed . . . a certified mold remediation contractor [should] be consulted."  (Compl., Ex. G, Phase I at ii-iii.)  Franklin Mills did not immediately share the report with Nationwide. (Compl. ¶ 30.)  On July 24, Kagan emailed a copy of the report to Scheuritzel.  The email stated that "there are major problems (significantly, but not limited to, the presence of mold) that need to be remedied.  Given the results of the inspection and the Phase I Environmental, my client is not presently prepared to proceed with the contemplated property transaction."  (*Id*. ¶ 31; Ex. E.) Nationwide did not respond to the email until September 2012.  (Ans. ¶ 50.)

###        D.       Procedural History

Nationwide filed this action against Franklin Mills on January 3, 2013, alleging that it had breached the Settlement Agreement by refusing to complete the Property transfer.  *(*Compl. ¶¶ 36-42.)  Nationwide also brings claims for specific performance (*id.* ¶¶ 43-51) and equitable

estoppel (*Id.* ¶¶ 52-60).  Franklin Mills filed a Motion for judgment on the pleadings on April 4, 2013.  (Mot. J. Pleadings, ECF No. 9.)  We issued a memorandum and order denying the Motion on September 23, 2014.  (ECF No. 19.)  Franklin Mills filed a Motion for partial summary judgment.  Nationwide filed a Motion for summary judgment.  Both parties have filed responses and replies to the instant summary judgment Motions.  (*See* Def.'s Br. Opp. Pl.'s Summ. J. Mot., ECF No. 36; Pl.'s Br. Resp. Def.'s Summ. J. Mot., ECF No. 37; Def.'s Reply Br., ECF No. 40; Pl.'s Reply Br., ECF No. 41.)  This Memorandum addresses each of the arguments made by the parties in support of their respective motions.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under governing law."  *Id.*  The court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment.  *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co*., 391 F.3d 497, 502 (3d Cir.

2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific

facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c) ("A party asserting

that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of

materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue

for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

Where, as here, the parties each file motions for summary judgment, "Rule 56(c) does not

mean that the case will necessarily be resolved at the summary judgment stage.  The court must

consider the motions separately.  Each party must still establish that no genuine issue of material

fact exists and that it is entitled to judgment as a matter of law."  *Atl. Used Auto Parts v. City of*

*Phila.*, 957 F. Supp. 622, 626 (E.D. Pa. 1997).

## III.   DISCUSSION

Nationwide's Complaint asserts claims for breach of contract (Count One), specific

performance of the Settlement Agreement (Count Two), and equitable estoppel (Count Three).

Franklin Mills' answer includes counterclaims for breach of contract (Counts One and Two).

Franklin Mills' Motion for Partial Summary Judgment argues that it is entitled to summary

judgment on all counts in the Complaint.  Nationwide's Motion for Summary Judgment contends

that it is entitled to summary judgment on all counts in the Complaint, as well as on Franklin

Mills' counterclaims.  After a careful review of the entire record, we conclude that there are

genuine issues of material fact on all claims.  Therefore, summary judgment as to all Counts of the Complaint and the Counterclaims will be denied.

### A.    Nationwide's Breach of Contract Claim

#### 1.    Statute of Frauds

In its Motion, Franklin Mills contends that the Statute of Frauds bars enforcement of any oral agreement Franklin Mills may have made with Nationwide to take legal title to the Property. Franklin Mills asserts that because the terms under which the Property was to be transferred were never reduced to a signed writing, Nationwide has no legally enforceable contract.

The statute of frauds is a deeply rooted principle of contract law that maintains that transfers in land title must be in writing.  *Bayer v. CitiMortgage, Inc.*, No. 11-02105, 2014 WL 4187556, at *4 (M.D. Pa. Aug. 22, 2014) (citing 33 P.S. § 1; *Kurland v. Stolker*, 533 A.2d 1370, 1372 (Pa. 1987)).  However, the statute of frauds related to land interests "is the type which is waivable and constitutes a declaration of public policy."  *Bethlehem Steel Corp. v. Tri State Indus., Inc.*, 434 A.2d 1236, 1239 (Pa. Super. Ct. 1981).  Therefore, oral agreements "relating to interests in land" will not be rendered void.  *Id.*  Unless a settlement agreement is made contingent upon reducing its terms to writing, the statute of frauds defense is waived when parties participate in settlement talks in an attempt to resolve an underlying dispute.  *Bayer*, 2014 WL 4187556, at *4; *Standard Steel, LLC v. Buckeye Energy, Inc.*, No. 04-538, 2005 WL 2403636, at *13 (W.D. Pa. Sept. 29, 2005); *see also Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) ("An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."); *Pulcinello v. Consol. Rail Corp.*, 784 A.2d 122, 124 (Pa. Super. Ct. 2001) ("An oral settlement agreement may be enforceable and legally binding without a writing."); *Good v. Pa.*

*R.R. Co.*, 384 F.2d 989, 990 (3d Cir. 1967) (per curiam) (holding that an oral settlement agreement "was valid and binding despite the absence of any writing or formality").

Here, Franklin Mills asserts that any agreement to transfer the Property cannot be enforced because conveyances of real property must be reduced to a signed writing.  To avoid the "settlement exception" to the statute of frauds requirement, Franklin Mills must either demonstrate that the Settlement Agreement was made contingent upon reducing its terms to a signed writing or that there is a substantial risk of fraud in its enforcement.  *See Meadows v. Harcum Coll.*, No. 13-2946, 2014 WL 5591035, at *3 (E.D. Pa. Nov. 4, 2014) ("It is well-settled that settlements of matters in dispute are favored by the law and must, in the absence of fraud and mistake, be sustained.  Otherwise any settlement agreement will serve no useful purpose.") (internal quotation marks omitted); *see also Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 128 (3d Cir. 1997) ("Pennsylvania courts have declared that the purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue."). Franklin Mills has not met its burden.

The transcript of the proceedings before Judge Restrepo makes it clear that both Franklin Mills and Nationwide planned to reduce the terms of the Settlement Agreement to writing before June 11, 2012.  However, there is nothing in the transcript to suggest that the agreement itself was made contingent upon such a writing.  What is clear is that an agreement was reached. Counsel on behalf of Franklin Mills stated on the record, "[w]e have resolved the litigation for a total sum of $1,450,00.00."  (May 31, 2012 Hr'g Tr. 3:25.)  Counsel further offered, "Franklin Mills has agreed to take – take ownership of this particular parcel of land subject to a couple of conditions."  Counsel went on to provide some of the specific conditions of the land transfer.

Franklin Mills again acknowledged the validity of the agreement through various emails sent by its counsel. In his June 11, 2012 (11:26 AM) email, Kagan wrote, "if title in the Property from Nationwide to Franklin Mills . . . occurs as contemplated . . . then Nationwide will owe no further Assessments." In response to an email some thirty minutes later from Scheuritzel, in which he stated that Nationwide will proceed based upon the oral Settlement Agreement placed on the record, Kagan responded, "[t]hat should be fine as long as I have the check in hand today." (June 11, 2012 (12:09 PM) Kagan email.) This is further evidence that Franklin Mills was intending to take title to the Property as discussed during the Settlement Agreement. *See In re Beeruk's Estate*, 241 A.2d 755, 758 (Pa. 1968) ("[W]e should always be satisfied with 'some note or memorandum' that is adequate to convince the court that there is no serious possibility of consummating fraud by enforcement." (quoting 2 Corbin on Contracts § 498 (1950))).

Franklin Mills asserts that there must be "strict adherence" to the statute of frauds in this case to prevent any "mischief" that Nationwide is trying to perpetrate. (Def.'s Summ. J. Mot. 15-16.) What Franklin Mills fails to recognize is that the very purpose of placing a settlement agreement on the record before a magistrate is to prevent that very mischief. We are satisfied that the transcript of the proceedings before Judge Restrepo and the subsequent emails sent by Franklin Mills' counsel provide evidence that the parties entered into a settlement agreement, the terms of which were not strictly conditioned upon a signed writing. Accordingly, the purpose of statute of frauds has been satisfied as to the property portion of the Settlement Agreement. Franklin Mills' Motion for Partial Summary Judgment based on its statute of frauds defense will be denied.

> 2.    *Absolute Right of Rejection*

Franklin Mills next argues that summary judgment should be entered in its favor on Nationwide's breach of contract claim because the "entire transaction [had] to be approved by David Simon, the CEO of Simon Property Group, and, also, [had] to be approved by Franklin Mills and Simon Property Group's lenders."  (Def.'s Summ. J. Mot. 29-30.)  Therefore, it contends that Franklin Mills retained an absolute right to reject the Property upon inspection. Even though neither party contends that no agreement was formed during the Settlement Conference, the legal effect of the agreement can be called into question by such an absolute right to reject.

"Settlement agreements are nothing more than contracts, and therefore basic contracts principles apply."  *Calif. Sun Tanning USA, Inc. v. Elec. Beach, Inc.*, 369 F. App'x 340, 346 n.6 (3d Cir. 2010).  The necessary elements of a contract are offer, acceptance, and consideration. *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991).  Acceptance of an offer "must be unconditional and absolute."  *O'Brien v. Nationwide Mut. Ins. Co.,* 689 A.2d 254, 258 (Pa. Super. Ct. 1997) (citation omitted).  An agreement formed in the context of settlement talks, however, will not be rendered unenforceable simply because principals to the litigation are required to ratify its terms.  *See, e.g., A.P. ex rel. Phinisee v. United States*, 556 F. App'x 132, 136 (3d Cir. 2014) (holding that an "implied obligation to use good faith" keeps ratification requirements from being "illusory").  In such cases, ratification serves as a condition precedent that must occur for the contract to become legally binding on the ratifying party.  *See, e.g., McClure v. Twp. of Exeter*, No. 05-5846, 2006 WL 2794173, at *3 (E.D. Pa. Sept. 27, 2006) ("[T]he agreement is still enforceable because [the plaintiff] assented, and, by ratifying the settlement agreement, [the defendant] satisfied the [] condition precedent.").

Here, Franklin Mills asserts that because ratification of the Settlement Agreement was a condition precedent to the Settlement Agreement's legal effect, it retained the right to reject the Property "irrespective of any 'criteria' or 'limitations' related to the inspection . . . ." (Def.'s Summ. J. Mot. 30.)  Even though the record supports the assertion that Franklin Mills retained an absolute right to reject the Settlement Agreement, it was not free to reject portions of the Agreement that it found undesirable while retaining those that it favored.  As we discussed in our September 23, 2014 Memorandum and Order, there is evidence that the parties entered into a unitary Settlement Agreement.[1]  Even if the contract is severable so that the parties may avoid a total breach, there is sufficient evidence to conclude that it was contemplated as a single and total arrangement to "resolve[] the litigation for a total sum of $1,450,00.00."  (May 31, 2012 Hr'g Tr. 3:25.)  Therefore, Franklin Mills must have rejected the Agreement in its entirety to contend that it had an absolute right to reject the Property transfer.  Its behavior suggests otherwise.

Upon receiving an email from Nationwide's counsel asking whether "Mr. Simon and the lenders approved the settlement," (June 5, 2012 (2:49 PM) Scheuritzel email), Franklin Mills' counsel responded by requesting a "current Phase 1" for the Property, among other documentation, with a reminder that payment of the $636,000 was to be delivered the next day (June 7, 2012 (2:20 PM) Kagan email).  In addition, Franklin Mills readily admits that it "accepted and deposited the payment of $636,000 . . . and it dismissed the Prior Litigation." (Def.'s Br. Opp. Summ. J. Mot. 18.)  There is a reasonable factual basis upon which to conclude that such conduct manifests approval and ratification of the Settlement Agreement.  *See*

---

[1] We determined "that neither the Complaint nor the transcript of the proceedings before Judge Restrepo suggests two independent contracts or that Franklin Mills would only *consider* taking title to the Property."  *Nationwide Life Ins. Co. v. Franklin Mills Associates Ltd. P'ship*, No. 13-0038, 2014 WL 4722623, at *6 (E.D. Pa. Sept. 23, 2014).  We reasoned that a promise merely to consider something would likely be illusory and unenforceable.  *Id.* at n.3.

*McGaffic v. City of New Castle*, 973 A.2d 1047, 1057 (Pa. Commw. Ct. 2009); *Crawford's Auto Ctr., Inc. v. Com., Pa. State Police*, 655 A.2d 1064, 1067 (Pa. Commw. Ct. 1995) ("A promise may be stated in words either oral or written *or may be inferred wholly or partly from conduct*.") (emphasis in original).  Therefore, Franklin Mills cannot meet its burden by asserting that through its right to ratify the entire Settlement Agreement, it had a right to reject just the Property portion of the Agreement irrespective of any contractual "criteria" or "limitations."

3.      *Title Transfer Limitations*

Having determined that there is evidence to support the conclusion that the purpose of the statute of frauds has been satisfied and that Franklin Mills ratified the contract when it deposited the $636,000 payment from Nationwide and dismissed its prior suit, we now address whether Franklin Mills breached the contract by failing to take legal title to the Property.  To state a claim for breach of contract under Pennsylvania law, Nationwide must establish:  "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (internal quotation marks omitted, alteration in original)).  Settlement agreements, like all contracts, require that "the minds of the parties should meet upon all of the terms, as well as the subject-matter."  *Mazzella v. Koken,* 739 A.2d 531, 536 (Pa. 1999) (citations omitted).  "If all of the material terms of a bargain are agreed upon, the settlement will be enforced; however, if there are ambiguities and undetermined matters which render the agreement impossible to enforce, the agreement will be set aside."  *Riviello v. First Nat. Cmty. Bank*, No. 10-2347, 2013 WL 1348259, at *1 (M.D. Pa. Apr. 3, 2013).  Where an agreement to settle a lawsuit is voluntary and unambiguous, it is binding upon the parties and they "consent to the exercise of the court's

16

power to compel compliance." *Cooper-Jarrett, Inc. v. Cent. Transp., Inc.*, 726 F.2d 93, 96 (3d Cir. 1984) (citation omitted).

Nationwide argues that the parties agreed to settle the instant matter under the terms of the Settlement Agreement.  It asserts that an agreed upon condition was that "Franklin Mills was not permitted to reject the Property unless an inspection revealed structural damage to the building." (Pl.'s Summ. J. Mot. 13.)  In addition, it contends that damage to the Property caused by water infiltration through the roof membrane was explicitly excluded as a basis upon which to reject the Property. (*Id.* at 4.)  As evidence for this claim, Nationwide first points to Kagan's statements before Judge Restrepo discussing the conditions under which the Property was to transfer.  Nationwide asserts that we should infer that the parties had come to an agreement as to the Property transfer limitations because Franklin Mills had agreed to take ownership of the Property "subject to a couple of conditions" with "some language setting forth the criteria" to be worked out later. (Hr'g Tr. 4:7-10.)  Given the reference to limitations, and that only "language" needed to be worked out between the parties, it is reasonable to infer that there was some meeting of the minds as to Franklin Mills' obligation to take title to the Property.  The explicit requirements of those limitations, however, remain a central point of contention.

In an attempt to resolve the ambiguity as to the limitation terms, Nationwide presents an attachment to an email purporting to offer a written draft of the oral Settlement Agreement.  The writing explicitly states that "Franklin Mills agrees to accept transfer of the Property unless structural repairs are required and necessary to render such improvements suitable for occupation and such repairs will cost more than $1,000,000 to implement. . . ." (June 7 Proposed Written Agreement 3.)  It contends that even if the Structural Inspection Limitation was not agreed upon during the Settlement Conference, Franklin Mills accepted the term in the written draft as a

modification when it deposited the $636,000 check into a business account instead of placing it into escrow.  (Pl.'s Summ. J. Mot. 16.)

Even if we were to accept Nationwide's argument and conclude that the parties agreed to the Structural Inspection Limitation, we cannot also conclude that it was the *only* limitation.  The record before us offers evidence to support a reasonable conclusion that environmental contamination provided another limitation for which the Property transfer could be avoided by Franklin Mills.  In response to the June 5, 2012 (2:49 PM) email from Scheuritzel asking if the principals had ratified the Settlement Agreement, Franklin Mills' counsel responded, "Paul—we need a current Phase 1."  In addition, counsel for Franklin Mills represented that the reason his client was not "prepared to proceed with the contemplated property transaction" was "significantly [related to], but not limited to, the presence of mold."  (July 24, 2012 Kagan email.)  Even Nationwide's counsel asserted that the Property was to be taken "on an 'As Is Where Is' basis provided that it was both structurally sound *and free of environmental contamination . . . .*"  (Sept. 10, 2012 Scheuritzel letter) (emphasis added).

Nationwide would have us believe that the Property inspector only suspected evidence of mold in the building.  (*See* Pl.'s Br. Resp. Def.'s Summ. J. Mot. 8.)  However, the inspector conducting the Phase I assessment concluded that "[b]ased upon the amount of fungal growth observed, AEI recommends a certified mold remediation contractor be consulted to conduct removal of . . . visible mold within the affected areas."  (Phase I at ii-iii.)  Without evidence to the contrary, it is reasonable to conclude that the presence of the "suspect mold" found during the inspection could serve as a basis upon which Franklin Mills might avoid taking title to the property, because it presented a serious concern of environmental contamination.  Accordingly, we cannot conclude at this juncture that there is no issue of material fact as to whether Franklin

18

Mills breached the terms of the Settlement Agreement when it refused to take title to the Property upon inspection.[2]

Conversely, Franklin Mills asserts that the Structural Limitation term cannot be enforced because Nationwide cannot prove the term "'***beyond a doubt***.'" (Def.'s Summ J. Mot. 19-20 (citing *Kurland v. Stolker*, 533 A.2d 1370, 1373 (Pa. 1987) (emphasis in original)). Franklin Mills relies on the cases of *Kurland* and *Firetree* to argue that Nationwide cannot enforce the Property transfer provision of the Settlement Agreement unless it meets this heavy burden. Franklin Mills' reliance on *Kurland* and *Firetree* is misplaced. Both cases stand for the proposition that a plaintiff has a high burden in overcoming a *statute of frauds defense* when attempting to enforce an oral agreement to transfer title to property. *See Kurland*, 533 A.2d at 1374 ("We ask ourselves, did [the plaintiff] overcome [presumptions in favor of the defendant] by such 'indubitable proof,' proof which is beyond a doubt, as is required to set aside the statute [of frauds]?"; *see also Firetree*, 978 A.2d at 1075 ("[W]here a plaintiff seeks to take an oral contract for real estate out of the statute [of frauds], the plaintiff's evidence must be 'complete' and satisfy numerous elements." (citation omitted)).

We have determined that there is a factual basis upon which to conclude that the purpose of the statute of frauds has been satisfied with regard to the Property agreement. Therefore,

---

[2] Franklin Mills' assertion that Nationwide should be precluded from using deposition testimony regarding the Settlement Conference for violating the state and federal mediation privilege is without merit. *See, e.g.*, *Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986) ("Having undertaken to utilize the judicial process to interpret the settlement and to enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements."); *Aetna, Inc. v. Lexington Ins. Co.*, 76 Pa. D. & C. 4th 19 (Pa. Ct. Com. Pl. 2005) (applying the reasoning of *Bank of America National Trust & Savings Association* in finding that "the confidentiality of the mediation process, as set out in 42 Pa.C.S.A. § 5949," is not violated when courts "consider communications related to [] mediation in order to ascertain the parties' intent with regard to [a] Settlement Agreement").

Nationwide need not prove the existence of the terms of the agreement "beyond a doubt." Nationwide has produced sufficient evidence to create a triable issue of fact as to whether the Structural Inspection Limitation was a material term to the Settlement Agreement.[3] Accordingly, the summary judgment motions of Franklin Mills and Nationwide as to Count One of the Complaint will be denied.

### B.    Nationwide's Specific Performance Claim

Nationwide and Franklin Mills move for summary judgment on Nationwide's claim for specific performance of the Settlement Agreement.  Specific performance is an equitable remedy for breach of contract, not an independent cause of action.  We therefore construe Nationwide's specific performance claim as a request for equitable relief on the breach of contract claim in Count One of the Complaint.  *See McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Bus. Trust*, No. 08-961, 2009 WL 1292808, at *3 (W.D. Pa. May 7, 2009) (construing count for specific performance as request for equitable remedy for breach of contract); *accord Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 727 (D. Del. 2011) ("Specific performance is a remedy sought for breach of contract, and not a cause of action in and of itself.").  Franklin Mills argues that Nationwide is barred from seeking specific performance because it is not an

---

[3] If at trial Nationwide is able to prove that there was an enforceable agreement between the parties to transfer title to the Property, the burden will shift to Franklin Mills to establish an exclusion to its contractual obligation.  *See, e.g.*, *Sabella v. Appalachian Dev. Corp.*, 103 A.3d 83, 93 (Pa. 2014) ("A defendant asserting an affirmative defense has the burden of proof as to that affirmative defense."); *see also Wilbert v. Pittsburgh Consolidation Coal Co.*, 122 A.2d 406, 408 (Pa. 1956) ("Ordinarily, one who asserts an affirmative defense has the burden of proving it.")  Franklin Mills questions why, if it was such an important term, Nationwide did not place the Structural Inspection Limitation on the record.  (Def.'s Summ. J. Mot. 20.)  One could also ask, why, if Franklin Mills wanted to maintain rejection rights to the Property once the Settlement Agreement had been ratified, it did not feel it important enough to place such rights on the record?  Franklin Mills has not answered that question.

available remedy for breach of an oral contract to convey property.  We disagree.

Franklin Mills relies on *Firetree,* 978 A.2d 1067 (Pa. Commw. Ct. 2009) and *Polka v. May*, 118 A.2d 154 (Pa. 1955), in support of the proposition that "[e]ven if Nationwide avoids the Statute of Frauds, it cannot compel specific performance."  (Def.'s Summ. J. Mot. 19.) Franklin Mills' reliance is misplaced.  Both *Firetree* and *Polka* stand for the proposition that specific performance is not an available remedy when a contract for the sale of property is unenforceable under the statute of frauds.  *Firetree*, 978 A.2d at 1076 ("To award [specific performance] to [the plaintiff] would be tantamount to giving it the benefit of a contract that is unenforceable under the Statute of Frauds."); *Polka* 118 A.2d at 156 ("[A] decree of specific performance against the [defendant]" cannot be granted "on the ground of estoppel, since the principle of estoppel may not be invoked against the operation of the statute of frauds.").

Where, as here, there is a basis upon which to take the oral contract for the sale of property out of the purview of the statute of frauds, specific performance of that contract may be granted.  *See Partrick & Wilkins Co. v. Adams*, 369 A.2d 1195, 1199 (Pa. 1977) (holding that an oral modification to a contract transferring real property can be enforced and specific performance granted when "the mischief the statute of frauds was enacted to guard against becomes in that case nonexistent"); *see also Lehner v. Montgomery*, 119 A.2d 626, 628 (Pa. 1956) (reasoning that an oral contract for property can be specifically enforced where "there is little likelihood that the owner is being made the victim of a fraud to obtain his land"). Therefore, both Nationwide's and Franklin Mills' motions for summary judgment on Count Two of the Complaint will be denied.

### C.       Nationwide's Equitable Estoppel Claim

Nationwide and Franklin Mills move for summary judgment on Nationwide's equitable estoppel claim.  "A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity."  *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983).  It "applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken." *Blofsen v. Cutaiar*, 333 A.2d 841, 843 (Pa. 1975).  "Under Pennsylvania law, equitable estoppel consists of three elements: '1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel.'"  *Wayne Moving & Storage of New Jersey, Inc. v. Sch. Dist. of Phila.*, 625 F.3d 148, 155 (3d Cir. 2010) (quoting *Chester Extended Care Ctr. v. Pa. Dep't of Pub. Welfare,* 586 A.2d 379, 382 (Pa. 1991)).  The party seeking to enforce an oral contract under a theory of equitable estoppel "has the burden of establishing estoppel by clear, precise and unequivocal evidence." *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.*, 636 A.2d 156, 163 (Pa. 1994).

Nationwide argues that judgment should be entered in its favor, even if a contract had not been formed during the Settlement Conference or when it paid partial Settlement, because Franklin Mills is estopped from denying its obligation to accept title to the Property.  Nationwide contends that Franklin Mills induced it to submit a check to its counsel for $636,000 while remaining silent about the potential disagreement over the inspection limitations found in the Proposed Written Agreement.  (Compl. ¶¶ 18-21.)  It further contends that Franklin Mills

deposited the check despite instructions not to do so if there was disagreement between the

parties, and despite instructions to place the check into an escrow account until a written

Settlement Agreement was executed.  (*Id.* ¶ 25.)  Nationwide argues that because Franklin Mills

encouraged payment and did not return the $636,000 check or place it into escrow, it manifested

assent to the terms set forth in the Settlement Agreement.  Nationwide argues that "[i]f Franklin

Mills disagreed with the terms set forth in the Settlement Agreement, it should have said so."

(Pl.'s Mot. at 21.)

　　　　We do not disagree that Franklin Mills continued to manifest assent to the Settlement

Agreement when it deposited the $636,000 check.  In addition, its failure to propose an

alternative settlement draft outlining the specific limitations to the Property transaction by the

June 10, 2012 deadline is problematic.  It would have been prudent for Franklin Mills to place

the funds into an escrow account, as Nationwide requested, until the parties had reached a

mutually agreed upon writing setting forth the specific terms of the Settlement Agreement.

However, Franklin Mills was under no contractual obligation to place the funds in escrow.

Furthermore, the evidence presented thus far does not unequivocally establish that Franklin Mills

misled Nationwide into believing that it had adopted either of its proposed written agreements.

To the contrary, Franklin Mills presents facts to support the proposition that it rejected the

proposed written offer, and merely required payment to begin performance of one of its

contractual obligations, dismissing the Assessment Action against Nationwide.  (*See* June 11,

2012 Kagan email ("[T]he contemplated transaction transferring the property from Nationwide

to Franklin Mills should not be included in a settlement document resolving the lawsuit.  That is

a separate item.").)  In fact, the day the check was delivered, Nationwide's counsel stated, "I will

hand deliver the check to you this afternoon *based upon the settlement we put on the record* and

then we can resolve the other outstanding issues soon." (June 11, 2012, 11:51AM, Scheuritzel email (emphasis added.)) Such a statement does not necessarily lead to a conclusion that Nationwide was misled into believing that Franklin Mills had fully adopted one of its Proposed Written Agreements.

What Nationwide fails to address is the reasonable presumption that Franklin Mills could avoid taking title to the Property under the oral Settlement Agreement for reasons other than structural defects found upon inspection. Even though there is no mention of it in the June 11 Proposed Written Agreement, subsequent correspondences sent by both counsel for Nationwide and Franklin Mills allude to a right to reject the Property if "environmental contamination" was found. (July 24, 2012 Kagan email; Sept. 10, 2012 Scheuritzel letter.) As discussed above, the presence of mold may have formed a reasonable basis upon which Franklin Mills failed to take title to the Property. Although some of its actions may be deemed suspect, we cannot currently conclude that Franklin Mills misled Nationwide into believing that it would take title to the Property without condition, absent structural defects in excess of $1,000,000. Therefore, we need not address the remaining elements of Nationwide's equitable estoppel claim and summary judgment will be denied.[4]

---

[4] In opposition to Nationwide's Motion for Summary Judgment on its equitable estoppel claim, Franklin Mills asserts that Nationwide cannot establish causation because it did not move to modify or vacate this court's dismissal order in the previous action. (Def.'s Br. Opp. Summ. J. 25.) Franklin Mills suggests that because Nationwide did not file a motion for relief within ninety days of the order dismissing the Assessment Litigation, pursuant to Local Rule of Civil Procedure 41.1(b), it is not entitled to relief. Even though this court would lack jurisdiction to entertain a motion in the previous Assessment action to enforce the Settlement Agreement, we are not asked to do so here. Nationwide has filed its current motion in a separate suit pursuant to 28 U.S.C. § 1332. Therefore, Nationwide is not precluded from seeking specific performance of the Settlement Agreement or any damages resulting from its breach. *See State Farm Mut. Auto. Ins. Co. v. Makris*, No. 01-5351, 2003 WL 22533696, at *2 (E.D. Pa. Oct. 21, 2003) (applying Local Rule 41.1(b) in holding that "the proper vehicle" to enforce a settlement agreement is by filing a "fresh suit"); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382,

Franklin Mills asserts that Nationwide's equitable estoppel claim is precluded by the statute of frauds.  (Def.'s Summ. J. Mot. 18.)  Having determined that the purpose of the statute of frauds has been satisfied, we need not address this issue further.  Franklin Mills' summary judgment motion as to Count Two of the Complaint will be denied.

### D.      Franklin Mills' Counterclaims

Nationwide contends that it is entitled to summary judgment on Franklin Mills' counterclaims.  (*See* Pl.'s Summ. J. Mot. 26.)  The counterclaims allege that Nationwide has breached its obligation to pay assessments (Count One) and its obligation to maintain the Property (Count Two).

Nationwide's putative ownership of the Property is the source of its obligations to Franklin Mills.  However, the Complaint and Plaintiff's Answer and Affirmative Defenses to Counterclaim allege that but for Franklin Mills' breach of the Settlement Agreement, Nationwide would not have owned the property during the period for which Franklin Mills claims it is owed assessment fees.  Nationwide restates this argument in its current Motion.  (Pl.'s Summ. J. Mot. 26.)  Nationwide further contends that even if Franklin Mills is not obligated to accept conveyance of the Property, it cannot continue to levy promotional and maintenance assessment fees against Nationwide because it has fully satisfied all past, present, and future liabilities to Franklin Mills.  (*Id.* at 19.)  In resolving this issue Nationwide requests that we:

> (i) enter judgment in favor of Nationwide in an amount equal to potential Assessments owed plus future taxes, maintenance and utility payments and (ii) enter judgment in favor of Nationwide declaring that the Assessments, restrictions and other covenants and conditions found in the Declaration and Supplemental Agreement no longer apply to the Property, apply to Nationwide or run with the land.

---

(1994) ("[E]nforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

(*Id.* at 27.)

To hold that Nationwide's $636,000 payment to Franklin Mills constitutes an accord and satisfaction of all past, present, and future assessment liability associated with the Property, we would first have to divide the Settlement Agreement into two distinct parts. Where there is no express language compelling contract terms to be indivisible, "a court may look to the conduct of the parties and the character of the consideration to determine severability." *Raab v. Lander*, 427 F. App'x 182, 185 (3d Cir. 2011). Under Pennsylvania law, if the contractual consideration "is apportioned, either expressly or by necessary implication the contract will generally be held to be severable." *Heilwood Fuel Co. v. Manor Real Estate Co.*, 175 A.2d 880, 885 (Pa. 1961) (citation omitted). Although the record supports a presumption that a unitary contract was formed during the Settlement Conference, Nationwide's $1,450,000.00 obligation was broken down into two distinct payments, one in which "$636,000 [was] to be paid to [Franklin Mills] on or before June 10th, 2012," and "[t]he remaining $814,000 [to] be paid at the closing of [the Property] transaction." (May 31, 2012 Hr'g Tr. 3:26-27.) We will, therefore, consider Nationwide's accord and satisfaction claim.[5]

"The elements of accord and satisfaction are: (1) a disputed debt (2) a clear and

---

[5] In our September 23, 2014 Memorandum and Order, we did not adopt Franklin Mills' assertion that the Settlement Agreement was a guise for what in fact were two distinct agreements—the first agreement being that Nationwide would pay $636,000 to Franklin Mills to settle the previous action between the parties and the second being the agreement "'that Franklin Mills would consider taking title to the Property subject to an inspection and corporate and lender approvals.'" *Nationwide*, 2014 WL 4722623, at *5. Here, we are severing the unitary agreement to make a determination as to whether Nationwide has sufficiently performed its duties under the Settlement Agreement to satisfy all past, present, and future Property assessment claims. "The primary objective when interpreting a contract is to ascertain and give effect to the intent of the parties." *In re Wolfe*, 378 B.R. 96, 102 (Bankr. W.D. Pa. 2007) (citing *Murphy v. Duquesne University*, 777 A.2d 418, 429 (Pa. 2001)). If, by paying the $636,000 Nationwide has satisfied its past, present, and future assessment liabilities, the primary objective of the Settlement Agreement will have been served.

unequivocal offer of payment in full satisfaction and (3) acceptance and retention of payment by

the offeree." *Fleming v. CNA Ins. Co.*, 52 F. Supp. 2d 499, 502 (E.D. Pa. 1999) (citations

omitted).  We do not doubt that there was a disputed debt.  However, we cannot conclude based

upon the evidence that the $636,000 payment made to Franklin Mills was an "unequivocal offer"

made in full satisfaction of all promotional and maintenance assessment fees against Nationwide.

Although Nationwide sent the $636,000 payment accompanied by the draft written proposal

stating that the payment was in "full and complete satisfaction of all past, present and future

liabilities for Assessments . . . " (June 11 Proposed Written Agreement at 2), the letter

accompanying the check written by Nationwide's counsel asserts that the $636,000 "represents

an accord and satisfaction regarding all *outstanding* amounts claimed by Franklin Mills in the []

litigation" (June 11, 2012 Scheuritzel Letter (emphasis added)).  The factual issue as to what the

payment was in satisfaction of has not been made indisputably clear.  A reasonable fact finder

could determine that, based on the June 11 letter, the $636,000 payment was in satisfaction of

only those liabilities that were the source of previous litigation, not all future assessment

liabilities.

Furthermore, if one were to conclude that the $636,000 payment was in satisfaction of all

past, present, and future assessment liabilities, the utility of the Property transfer under the

Settlement Agreement would be questionable as to both parties.  A contract interpretation that

may nullify a material provision of the Settlement Agreement is not favored.  *See Int'l Org.

Master, Mates & Pilots of Am., Local No. 2 v. Int'l Org. Masters, Mates & Pilots of Am., Inc.*,

439 A.2d 621, 624 (Pa. 1981) ("In construing a contract the intention of the parties must be

ascertained from the entire instrument and each and every part of it must be taken into

consideration and given effect if reasonably possible.") citations omitted)); *see also Cerceo v. De*

*Marco*, 137 A.2d 296, 298 (Pa. 1958) ("An interpretation will not be given to one part of a contract which will annul another part of it.") internal quotation marks ant citation omitted)).

Only after the factual dispute over Franklin Mills' right to reject the Property is resolved can we determine the rights and duties of the parties. We therefore conclude that Nationwide's request for summary judgment on Franklin Mills' counterclaims must be denied.

## IV.    CONCLUSION

Clearly there are genuine issues of material fact with regard to the claims being made here by Nationwide and by Franklin Mills. Accordingly, the Motions for Summary Judgment filed by both Nationwide and Franklin Mills will be denied.[6]

An appropriate Order will follow.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK,   J.**

---

[6] Having determined that summary judgment is not warranted on any of Nationwide's or Franklin Mills' claims, we need not reach questions of remedies raised by Nationwide in its present Motion.  (*See* Pl.'s Summ. J. Mot. 23-25.)